UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

```
                                    FILED
                          at  3  O'clock & 48 min P M
                          Date   8-8-05
                          MICHAEL F. McHUGH, CLERK
                          United States Bankruptcy Court
                               Savannah, Georgia
```

| | |
|---|---|
| IN RE: ) | CHAPTER 13 |
| ) | CASE NO. 04-51703-JDW |
| RYAN DALTON THORNTON, ) | |
| ) | |
| DEBTOR. ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

<u>COUNSEL</u>

For Debtor:   William R. Little, III
Post Office Box 177
Waycross, Georgia 31502-0177

For Movant:   Benjamin S. Eichholz
Post Office Box 10244
Savannah, Georgia 31412

AO 72A
(Rev.8/82)

## MEMORANDUM OPINION

This matter comes before the Court on the motion to settle a personal injury claim and application for employment of attorney. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(A). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtor, Ryan Thornton, filed a Chapter 13 petition on October 12, 2004. On April 8, 2005, Debtor filed an application to approve the employment of Benjamin S. Eichholz as an attorney for a personal injury claim. The application was prepared by Mr. Eichholz. It recited that Debtor had suffered personal injuries as a result of an automobile collision on December 4, 2003, which was less than a year prior to the bankruptcy filing. It stated, "The debtor requests that the attorney be engaged under a contingency arrangement based on recovery in the case. Said contingency arrangement has been agreed to be 40% of the recovery made. (See Exhibit 'A'). Debtor's personal injury attorney will consent to a fee of 33 1/3% of debtor's recovery." (Appl. for Approval of Employ. of Atty. ¶ 4.) No "Exhibit A" was attached to the application. Despite multiple inquiries (no fewer than six) made to Mr. Eichholz's office by Court personnel, no copy of the contingency fee agreement has been submitted to the Court.

The application for employment asserts that Mr. Eichholz was engaged to be "legal counsel to the debtor because of his experience and knowledge in the field of personal injury

claims." The application provides further that "[i]t is believed that said attorney is well qualified to represent the debtor in anticipated negotiations."

Simultaneous with the employment application, Mr. Eichholz filed on behalf of Debtor a Motion to Settle Personal Injury Claim. The motion shows that a settlement was obtained through negotiations with the "tortfeasor's insurance carrier" in the amount of $9,500. The motion requests authorization to settle the personal injury claim and authorization to collect attorney fees in the amount of $3,163.50 and costs advanced in the amount of $154.56. The request provides as follows: "Wherefore, Ryan Thornton prays that this Motion To Settle Personal Injury Claim be granted." Upon inquiry by the Court at hearings conducted to consider the motion, the Court has determined that at the time the motion was filed, Debtor was unaware of the settlement and had not authorized it.

On May 18, 2005, the Court held the first hearing (the "May hearing") on the application for employment and the motion to settle. Mr. Eichholz did not appear, due to lack of notice,[1] but Debtor and his bankruptcy counsel were present. Debtor testified about his representation by Mr. Eichholz. Debtor contacted Mr. Eichholz's office by payphone because he does not have a home telephone. Initially, Debtor spoke with an unspecified nonattorney member of Mr. Eichholz's staff, who mailed him an affidavit. He did not personally meet with anyone. Debtor sent the staff person copies of the police report and medical records related to his personal injury case. According to Debtor and later confirmed by Mr. Eichholz, the staff person was fired, and she threw away Debtor's papers, causing

---

[1] Following the hearing, the Court learned of an oversight in the clerk's office in failing to send notice of the hearing to Mr. Eichholz. Consequently, the Court has drawn no negative inference from Mr. Eichholz's absence from the May hearing.

3

Debtor to have to start the process from the beginning. At this point, Debtor spoke with Mr. Eichholz by telephone. Mr. Eichholz apologized for the problems and agreed to reduce his contingency fee from 40 percent of the recovery to 33 1/3 percent. That was the only direct communication Debtor had with Mr. Eichholz. Debtor called Mr. Eichholz's office every couple of weeks and talked with a staff person. At some point, Debtor was offered a settlement of $4,600, which he refused. It is unclear who communicated the settlement offer to Debtor. Debtor testified that he did not know about the current $9,500 settlement offer until he received notice of the motion to settle filed by Mr. Eichholz and that he did not agree to that settlement.

On June 3, 2005, the Court entered an order reciting the facts as they appeared at the May hearing and scheduling a continued hearing for June 24, 2005 (the "June hearing"). Mr. Eichholz was required to appear at the June hearing and urge the relief sought in his motion as well as to answer the concern stated by the Court in the order regarding the quality of legal representation provided by Mr. Eichholz.

At the June hearing, Mr. Eichholz appeared along with Debtor, Debtor's bankruptcy counsel, and Debtor's father. Mr. Eichholz confirmed that he had never personally met the Debtor until a few minutes in advance of that hearing. He confirmed, likewise, that no one in his office had ever met Debtor personally. Debtor reiterated at the hearing that he had never authorized any settlement of this case for less than $30,000. Debtor's father, who had conversations with clerical staff in Mr. Eichholz's office, testified that he had never, on behalf of Debtor, authorized any settlement of the case. According to Mr. Eichholz, Debtor's father approved the $9,500 settlement or communicated Debtor's approval of the

4

settlement on March 18, 2005. Debtor's father denied doing so.

Upon further examination of Debtor by Mr. Eichholz, Debtor said he was persuaded by Mr. Eichholz in the few minutes prior to the hearing that the settlement of $9,500 was a good settlement and that it would be the best he could hope to accomplish under the circumstances. Debtor's bankruptcy attorney confirmed this conversation and the agreement that followed.

The Court observed during the hearing that Debtor experienced some difficulty expressing himself and understanding fully the intricacies of this transaction. Debtor's father testified that Debtor suffers from reading and perception problems. There was no indication that Debtor's disability was caused by the accident in question, but equally certain is the fact that Debtor's disability requires unusually careful consultation with Debtor in order to explain Debtor's options in the case. The Court finds that Debtor never authorized, personally or through his father, the settlement of his personal injury case. The settlement agreement was reached on behalf of Debtor by Mr. Eichholz on the strength of Mr. Eichholz's conviction that this settlement is the best one Debtor could obtain under the circumstances.

Turning to the question of whether Mr. Eichholz is possessed of the necessary expertise to make such a determination, Mr. Eichholz testified that he has personally conducted ten jury trials in his legal career. Mr. Eichholz further testified that if Debtor's case had not been resolved by settlement, it would have been tried by a lawyer employed by Mr. Eichholz. This revelation, taken together with irregularities specified above–the failure to meet Debtor and the failure to gain Debtor's approval for the settlement–point to the

5

conclusion that the services rendered by Mr. Eichholz were not of the substance and caliber that could be reasonably expected of an attorney hired to prosecute of a personal injury lawsuit.

## Conclusions of Law

The Court has before it two matters: the approval of Mr. Eichholz's employment and the approval of the settlement of the personal injury claim. However, the Court does not have any specific statutory authority to address either matter. Section 327 of the Bankruptcy Code provides that "the trustee, with the court's approval, may employ ... professional persons ... to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C.A. § 327(a) (West 2004). By its terms, the statute does not apply to attorneys hired by a Chapter 13 debtor. Thus, Mr. Eichholz's employment is not subject to Court approval. See In re Bowker, 245 B.R. 192, 200 n.8 (Bankr. D.N.J. 2000); 3 Collier on Bankruptcy ¶ 327.01 (15th ed. rev'd 2005).

Similarly, Federal Rule of Bankruptcy Procedure 9019 provides for court approval of a compromise or settlement after notice and a hearing "[o]n motion by the trustee." For the same reasons that Section 327 is inapplicable to Chapter 13 debtors, Rule 9019 likewise is inapplicable. The Court has no basis for denying the settlement, particularly when Debtor has agreed to it, despite the circumstances through which Debtor's agreement was obtained.

However, the Court does have statutory authority over Mr. Eichholz's fee. In fact, "the lack of necessity for court appointment heightens rather than diminishes the need for court supervision over the compensation process." In re Taylor, 216 B.R. 515, 523 (Bankr. E.D. Pa. 1998). Section 329 of the Bankruptcy Code provides as follows:

6

> (a) Any attorney representing a debtor in a case under this title, <u>or in connection with such a case</u>, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
>
> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive....

11 U.S.C.A. § 329 (West 2004) (emphasis added). While this provision most clearly applies to the debtor's bankruptcy attorney and any attorney who may have provided pre-bankruptcy planning, it can also be applied to Mr. Eichholz because he represented Debtor "in connection with" the bankruptcy case.

> [T]he "in connection with" language used in § 329 extends the scope of the Court's review to compensation paid by the debtor to an attorney any time after one year prior to the commencement of the debtor's bankruptcy case, whether or not the court can make a subjective determination that the debtor was contemplating bankruptcy, <u>if</u> it can be objectively determined that the services rendered or to be rendered by the attorney have or will have an impact on the bankruptcy case.

<u>In re Rheuban</u>, 121 B.R. 368, 378 (Bankr. C.D. Calif. 1990); <u>see also</u> <u>In re Keller Fin. Servs. of Fla., Inc.</u>, 248 B.R. 859, 879 (Bankr. M.D. Fla. 2000) ("The phrase ['in connection with'] may include services related to the precipitating cause of the bankruptcy, or services which are inextricably intertwined with the bankruptcy.").

Debtor's personal injury case is connected to the bankruptcy case. In fact, Debtor's bankruptcy counsel stated that Debtor had to file for bankruptcy due to lost wages in the months following the accident. In addition, to the extent the value of the personal injury

7

claim exceeds the amount of Debtor's exemption,[2] the excess funds recovered would be property of the estate. Even as to the $9,500 recovery, the funds could be considered disposable income available to make plan payments. Because Mr. Eichholz's employment occurred within the one year lookback period provided by the statute, his fees are subject to scrutiny.

Like all other attorneys licensed in Georgia, Mr. Eichholz is governed by the Georgia Rules of Professional Conduct (the "Rules"), which "provide a framework for the ethical practice of law." Ga. R. Prof. C., Scope ¶ 14. The Rules fall into two categories: mandatory and permissive/aspirational. Mandatory rules can be identified by their use of the terms "shall" or "shall not," while permissive rules use the terms "may" or "should." Id. ¶ 13. Although the Rules do not expressly require attorneys to personally meet and interview their clients, such actions may be necessary to comply with the provisions governing competence and communication.

Rule 1.1 states:

> A lawyer <u>shall</u> provide competent representation to a client. Competent representation as used in this Rule means that a lawyer shall not handle a matter which the lawyer knows or should know to be beyond the lawyer's level of competence without associating another lawyer who the original lawyer reasonably believes to be competent to handle the matter in question. <u>Competence requires</u> the legal knowledge, skill, thoroughness and <u>preparation reasonably necessary for the representation</u>.

---

[2] A debtor may exempt "[a] payment, not to exceed $10,000, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor ...." O.C.G.A. § 44-13-100(a)(11)(D) (2002). The Court has only Mr. Eichholz's assurances that $9,500 is the best possible settlement in this case. For the reasons discussed in this Opinion, such assurances leave ample room for doubt.

8

In some cases, it may be reasonable for an attorney to rely on indirect client communications completed through associates, clerks, or other office personnel; it is not unusual for a senior attorney to supervise representation through subordinates. However, it is unlikely that it will be reasonable for an attorney to rely entirely on indirect communications through <u>non-attorney</u> personnel. In these circumstances, the attorney is forced to depend on the observations of a third party to evaluate the client's understanding of the legal issues and to determine whether additional counseling is needed. In fact, Rule 1.4 states that a "lawyer <u>shall</u> explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation, shall keep the client reasonably informed about the status of matters and shall promptly comply with reasonable requests for information." It would be virtually impossible for an attorney who lacks any direct communication with his client to fully satisfy this Rule. Consequently, the Court concludes that by conducting his representation of Debtor through nonlawyer intermediaries in his office, Mr. Eichholz has failed to fully satisfy the provisions of Rules 1.1 and 1.4.

Mr. Eichholz committed a more obvious violation of the Rules when he obtained a settlement without Debtor's authority. Rule 1.2 provides: "A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter." A client cannot make such a decision unless and until he is informed of a settlement offer. In <u>In re Lewis</u>, 266 Ga. 61, 463 S.E.2d 862 (1995), the Georgia Supreme Court suspended an attorney because he "settled his client's claim without property authority ...." <u>Id.</u> at 61, 463 S.E.2d at 863 (construing Standard 45(f), a predecessor to the current professional rules). In that case, the court found a violation of the rules even though the client had signed a contract giving the

9

attorney the authority to settle the case if it was in the best interest of the client. Id. at 61-2, 463 S.E.2d at 863 (citing O.C.G.A. § 15-19-5, -6 for the proposition that the Georgia Code "prevent[s] an attorney from settling a client's claim without special authority."). The court found the contractual provision to be contrary to public policy and in conflict with an attorney's fiduciary obligations to his clients. Id. at 62, 463 S.E.2d at 863.

In this case, Debtor ultimately agreed to the settlement. However, the circumstances under which the agreement was obtained are troubling to the Court. Mr. Eichholz met Debtor for the first time moments before the June hearing to which the Court had summoned Mr. Eichholz to explain, among other things, why he had settled the case without Debtor's authority. Although Debtor's bankruptcy counsel agrees that the settlement negotiated by Mr. Eichholz is in Debtor's best interest, the circumstances carry a whiff of impropriety. They give the appearance that Mr. Eichholz may have pressured Debtor to accept the settlement so that Mr. Eichholz could be spared reprimand by the Court. Whether or not Mr. Eichholz applied such pressure is not essential to the Court's conclusions. Mr. Eichholz has failed to provide even the most basic services expected of a personal injury attorney:

(1) he failed to meet with Debtor in person;

(2) he failed to personally assess the nature and severity of Debtor's injuries in connection with such a personal meeting;

(3) he failed to converse with Debtor about the prospects for a successful recovery in the case; and

(4) he failed to obtain Debtor's permission to enter into a settlement of the case until such failure had been commented upon by the Court.

Sadly, this manner of delivery of services does not appear to represent a lapse on the part of Mr. Eichholz but instead complies with his usual operational procedures as he explained them at the June hearing.

The foregoing circumstances are relevant to the reasonableness of Mr. Eichholz's fee. Also relevant is the amount of time spent by Mr. Eichholz on the case. The Court recognizes that a contingency fee agreement[3]–which does not generally take time in account–is an acceptable and accepted arrangement in personal injury cases. See Ga. R. Prof. C. 1.5(c). But, the standard for reasonableness of fees applied pursuant to § 329 does not conflict with the contingency fee standard. In fact, the Georgia rules themselves carry a reasonableness requirement that specifically includes consideration of the time required to perform the legal services. Ga. R. Prof. C. 1.5(a). However, the Court has scant evidence as to time spent; no timesheets were submitted. If any determination can be made from the description of what Mr. Eichholz did, then the Court would assume the report of his time would only include some telephone calls, not likely to be more than an hour or two. If there were other services rendered to Debtor by Mr. Eichholz, there was no mention made of those activities at the June hearing.

For the foregoing reasons, the Court concludes that Mr. Eichholz's representation of Debtor has been alarmingly substandard and that a fee in the amount of 33 1/3 percent of the settlement is unreasonable. Were it not for the fact that Debtor ultimately approved the settlement, the Court would be inclined to deny Mr. Eichholz any compensation. As it is,

---

[3] For purposes of this Opinion, the Court assumes Debtor and Mr. Eichholz have a valid contingency fee agreement. As noted supra, Mr. Eichholz has failed to provide a copy of any such agreement despite the Court's repeated requests that he do so.

the Court finds that Mr. Eichholz's compensation in this case should be limited to a fee of $500 and costs of $154.56.

Consideration of questions posed by this case does not include any input from authorities on legal ethics or expert testimony from attorneys whose opinion might be helpful to Mr. Eichholz or to the Court. The Court would welcome a motion for reconsideration if Mr. Eichholz would like to offer additional evidence in support of his application from such experts as he might identify in advance to the Court. In the event the Court receives such a request, in addition to hearing evidence presented by Mr. Eichholz, the Court may by its own motion summon experts to testify.

An Order in accordance with this Opinion will be entered on this date.

Dated this 8th day of August, 2005.

James D. Walker, Jr.
United States Bankruptcy Judge

AO 72A
(Rev.8/82)

CERTIFICATE OF SERVICE

I, Cheryl L. Spilman, certify that the attached and foregoing have been served on the following:

> William R. Little, III
> Post Office Box 177
> Waycross, Georgia 31502-0177
>
> Benjamin S. Eichholz
> Post Office Box 10244
> Savannah, Georgia 31412
>
> M. Elaina Massey
> Post Office Box 1717
> Brunswick, Georgia 31521

This 8th day of August, 2005.

_____
Cheryl L. Spilman
Deputy Clerk
United States Bankruptcy Court

AO 72A
(Rev.8/82)